UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────
SREAM, INC.,

               **Plaintiff,**

               - against -

SMOKE SCENE, INC. a/k/a SMOKE ZONE, et al.,

               **Defendants.**
───────────────────────────────

REPORT AND
RECOMMENDATION

15-CV-5185 (VEC) (RLE)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-28-16

**TO THE HONORABLE VALERIE E. CAPRONI, U.S.D.J.:**

## I. INTRODUCTION

On July 6, 2015, Plaintiff Sream Inc. ("Sream") brought this action against Smoke Scene Inc. a/k/a Smoke Zone ("Smoke Scene"), as well as Mega News Inc., and City Smoke Shop Inc. ("non-defaulting Defendants"), for damages arising under the Lanham Act, 15 U.S.C. § 1501 *et seq.* (Doc. No. 5, Complaint ("Compl.").) On December 7, 2015, the Court entered a default judgment against Smoke Scene as to liability after it failed to appear in the action. (Doc. No. 26.) That same day, the case was referred to the undersigned for an inquest on damages. (Doc. No. 27.) An inquest hearing was held on February 11, 2016. (Doc. No. 35.) For the reasons that follow, I recommend that Sream be awarded statutory damages of $50,000 against Smoke Scene and that Smoke Scene be enjoined from continuing to sell, or offer to sell, products branded with the counterfeit marks at issue in this case. I further recommend that Sream be denied attorneys' fees and costs without prejudice.

## II. BACKGROUND

### A. Facts Alleged in the Complaint

This case arises from Sream's allegation that Smoke Scene and the non-defaulting Defendants sold counterfeit glass water pipes that were branded with the "RooR" mark, of which

Sream is the exclusive licensee. When a court determines that a defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, must be taken as true. *Li Ping Fu v. Pop Art Int'l Inc.*, No. 10-CV-8562 (DLC)(AJP), 2011 WL 4552436, at *1 (S.D.N.Y. Sept. 19, 2011). Sream alleges the following facts in its Complaint.

Martin Birzle d/b/a RooR ("RooR") is a German-based "award-winning designer and manufacturer of smoker's products." (Compl. at ¶ 10.) RooR products are "highly acclaimed" for their innovative design and superior quality and, accordingly, "have a significant following and appreciation … in the United States." (*Id.* at ¶ 10-11.) RooR is the exclusive owner of several federally registered and common law trademarks, including for the word mark "RooR" and related logos. (*Id.* at ¶ 13.) Since at least 2011, Sream has been the exclusive licensee of the RooR mark in the United States. (*Id.* at ¶ 12.) Under the licensing agreement, Sream has manufactured water pipes under the RooR mark and also advertises, markets, and distributes water pipes, parts and other smoker's articles "in association with the RooR mark." (*Id.*) Because RooR and Sream "have built up and developed significant goodwill in the entire RooR product line," consumers are willing to pay higher prices for them. (*Id.* at ¶ 13-14.) "For example, a RooR-branded 45 cm water pipe retails for $300 or more, while a non-RooR product of equivalent size will usually sell for less than $100." (*Id.* at ¶ 14.) Sream has been granted all enforcement rights to obtain injunctive and monetary relief for past and future infringement of the RooR marks. (*Id.* at ¶ 16.)

Smoke Scene operates a retail smoke shop, called Smoke Zone, in Manhattan. (*Id.* at ¶ 7.) Sream had been investigating the counterfeit sale of RooR products at stores similar to Smoke Zone and the stores operated by the non-defaulting Defendants. (*Id.* at ¶ 19-23.) On January 19, 2015, James Orfanos ("Orfanos"), an investigator hired by Sream, purchased a glass pipe bearing

2

the "RooR" mark from Smoke Zone for $21.72. (*Id.* at ¶ 21; Ex. B.) Sream inspected it and confirmed that it was not an authentic RooR product, and, as neither Sream nor any other agent had authorized Smoke Scene to use the RooR Marks, "was in fact a counterfeit." (*Id.* at ¶ 22; Hr'g Tr. at 16:21-25.) While in the store, Orfanos observed "approximately 10 pipes bearing the ROOR [sic] logo located for sale inside and on top of the display cases." (Compl., Ex. B.)

Sream alleges that Smoke Scene intentionally uses a mark confusingly similar to or identical to the RooR mark to confuse customers, to aid in the promotion and sales of its counterfeit products, and "to receive higher profit margins." (*Id.* at ¶ 18, 27.) Smoke Scene has "traded upon and diminished the goodwill of the RooR Marks" as well as infringed upon RooR's federally registered trademarks. (*Id.* at ¶ 29.)

**B.   Procedural Background**

Sream filed its Complaint on July 6, 2016, alleging counterfeiting, trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; unlawful deceptive acts and practices under New York State General Business Law § 349; and unfair competition under New York State Law. Under its claim for trademark infringement, Sream alleges that it is "entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits, and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114 and 1116." (*Id.* at ¶ 42.) For its claim of trademark counterfeiting, Sream alleges it is entitled to an award of "statutory damages of up to $2,000,000 per mark infringed under 15 U.S.C. §[] 1117(c)(2)." (*Id.* at ¶ 51.) Sream further contends that [i]n the alternative, and at a minimum, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits, and treble damages, costs, and reasonable attorney's fees under 15 U.S.C. §[] 1117(b)." (*Id.* at ¶ 52.)

3

The Summons and Complaint were served on Smoke Scene on July 14, 2015, at Smoke Zone. (Doc. No. 7, Affidavit of Service.) Smoke Scene failed to timely move, answer, or otherwise respond to the Complaint and Sream asked the Clerk of Court to enter default against it. (Doc. No. 14.) The Clerk issued a Certificate of Default on August 20, 2016. (Doc. No. 15.) On October 26, 2015, Judge Valerie Caproni ordered Smoke Scene to show cause why an order should not be issued, pursuant to Rule 55 of the Federal Rules of Civil Procedure, holding it in default for failure to timely answer Sream's Complaint, and why an inquest should not be held to assess statutory damages. (Doc. No. 24.) Smoke Scene failed to show cause and on December 7, 2015, Judge Caproni entered default against it on the issue of liability and referred the case to the undersigned for an inquest on damages. (Doc. No. 26.) A hearing was held on February 11, 2016. (Doc. No. 35.) Sream filed its post-hearing memorandum on May 12, 2016. (Doc. No. 46.) Smoke Scene made no submission.

## C.    Sream's Evidence In Support of Damages

### 1.    Inquest Hearing Testimony

At the inquest hearing, Sream offered the testimony of two witnesses, Jarir Farraj ("Farraj"), president of Sream, and James Orfanos, the investigator who purchased the counterfeit RooR pipe from Smoke Scene. (Hr'g Tr. at 2-23, 23-36.) Farraj testified that Sream's annual volume of sales for RooR glassware products is "roughly $2 million to $2.5 million." (*Id.* at 6:24-25.) Sream distributes RooR products to fifteen to twenty retailers in the New York area, although Farraj testified that "there used to be a lot more" stores, around thirty to forty. (*Id.* at 7:8-11.) Farraj estimated that the store had seen a "50 to 60 percent" loss of business in the past three to four years, and speculated that the lost business "went to counterfeiters." (*Id.* at 7:11-12.)

Orfanos testified that he had conducted "between 300 and 350" investigations of retail shops on behalf of Sream and that he had uncovered counterfeit products in "about 122 or 123" shops. (*Id.* at 24:17, 25:4.) At Smoke Zone, he "counted approximately ten" fake or counterfeit RooR pipes. (*Id.* at 26:1-3.) Orfanos said that when searching for counterfeit RooR pipes, he uses three main identifiers: (1) the size of the pipe, noting that "anything less than 8 or 9 inches will almost certainly be counterfeit"; (2) price, noting that counterfeit RooR pipes are sold for between $20 and $40; and (3) inferior craftsmanship, noting that counterfeit RooR pipes tend to be made of "light glass, very brittle," will generally have some kind of imperfection such as cracks in the glass, and "the label will often be put on wrong." (*Id.* at 26:5-20.) Orfanos recounted that, generally, salespeople in smoke shops have "steered [him] away from" counterfeit RooR pipes, citing their inferior quality, and towards more expensive pipes. (*Id.* at 31:18-24.) He speculated that as a result, "the higher-end customers are starting to see Roor [sic] as not a premium brand when there are other competitors out there where you're not going to see counterfeits." (*Id.* at 32:5-7.)

### 2. Post-Hearing Submission

Sream filed a post-hearing memorandum, attaching as exhibits a proposed Order to Show Cause for Motion for Default Judgment, the Complaint, the Affidavit of Service, and Certificate of Default, and the transcript of the February 11, 2016 inquest hearing before the undersigned. (Doc. No. 46 ("Pl.'s Mem."), Ex. 1-5.) In the memorandum, Sream requests statutory damages for trademark counterfeit pursuant to 15 U.S.C. § 1117 "in an amount not less than $100,000, in addition to a permanent injunction plus legal fees and costs and any other relief that this court deems just and proper." (Pl.'s Mem. at 13.) Sream's memorandum does not include a specific

5

request for attorneys' fees or any evidence of the reasonableness of such fees, or the terms of a proposed permanent injunction. (*See generally,* Pl.'s Mem.)

### III. DISCUSSION

#### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over federal law claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 15 U.S.C. §§ 1051 *et seq.* (Lanham Act), 28 U.S.C. §§ 1338(a) (trademark) and (b) (unfair competition). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c).

#### B. Default Judgment and Inquest Standard

The Clerk of Court must enter default against a defendant who has failed to plead or otherwise defend an action, and that failure is shown by affidavit or otherwise. Fed.R.Civ.P. 55(a). Following a default judgment, all well-pled factual allegations of the complaint, except those relating to damages, are accepted as true. *Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir. 1993). A factual allegation will be deemed not well-pled only in "very narrow, exceptional circumstances." *Trans World Airlines, Inc. v. Hughes,* 308 F. Supp. 679, 683 (S.D.N.Y. 1969), *modified,* 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363 (1973).

At an inquest on damages, the plaintiff bears the burden of establishing an amount of damages with reasonable certainty. *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.,* 12 Civ. 1369 (LGS) (AJP) 2013 U.S. Dist. LEXIS 55804, *22 (S.D.N.Y. Apr. 18, 2013) (citing cases), *adopted by district judge at* U.S. Dist. LEXIS 120508, *1 (S.D.N.Y. Aug. 23, 2013). A court may make a determination on damages without a hearing "as long as it [has] ensured that there is

6

a basis for the damages specified in the default judgment." *TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc.*, 03 Civ. 517(GBD) (RLE), 2005 WL 2063786, at *2 (S.D.N.Y. Aug. 16, 2005) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997)). Accordingly, a court may rely on plaintiff's affidavits and documentary evidence in determining the reasonableness of the damages requested. *Id.* (citing *Tamarin v.. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir.1993)).

## C. Statutory Damages

### 1. Applicable Law

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, permits plaintiffs to elect as a remedy either actual or statutory damages for the sale of goods with counterfeit marks. 15 U.S.C. § 1117. Statutory damages may be awarded in the amount of:

> (1) not less than $ 1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $ 2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

*Id.* § 1117(c).

Although § 1117 provides no further guidelines for assessing appropriate statutory damages, "courts have found some guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (citing *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)); *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, 11 Civ. 5980 (RA) (JLC), 2013 U.S. Dist. LEXIS 161188, *31 (S.D.N.Y. Nov. 12, 2013); *North Face Apparel Corp. v. Moler*, 12 Civ.

7

6688 (JGK) (GWG), 2015 U.S. Dist. LEXIS 93133, *14 (S.D.N.Y. July 16, 2015). The factors considered by courts include:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

*Gucci Am. Inc.*, 315 F. Supp. 2d at 520 (quoting *Fitzgerald Pub. Co., Inc.*, 807 F.2d at 1117.)

In cases falling under both statutes, statutory damages against a defendant who acted willfully are intended to serve the dual role of compensating a plaintiff for injuries and discouraging wrongful conduct by the defendant and others. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001); *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009). ("Where a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.")

Plaintiffs may also obtain injunctive relief, including an order enjoining defendants from future sale of goods with the counterfeit marks, "according to the principles of equity and upon such terms as the court may deem reasonable." *Collins v. Aztar Corp.*, 210 F.3d 354, 354 (2d Cir. 2000; 15 U.S.C. § 1116(a). A plaintiff is entitled to a permanent injunction if it can demonstrate "(1) actual success on the merits, and (2) irreparable harm." *Gucci Am., Inc. v. Duty Free Apparel*, Inc., 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003). When the defendant is in default, actual success on the merits is established. *A.M. Surgical, Inc. v. Akhtar*, 2016 U.S. Dist. LEXIS 53055, *32 (E.D.N.Y. Apr. 19, 2016) (citing *Gen. Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc.*, 817 F. Supp. 2d 66, 74 (E.D.N.Y. 2011)). Additionally, "[i]n a trademark case, irreparable injury

is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *CommScope, Inc. v. Commscope (U.S.A.) Int'l Group Co.*, 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011) (quoting *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987)).

The statute also enables a court to award costs and, in "exceptional cases," reasonable attorneys' fees, to the prevailing party. 15 U.S.C. § 1117(a). *See also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 265-66 (2d Cir. N.Y. 2014) ("exceptional" circumstances in Lanham Act cases include willful infringement). In the Second Circuit, attorneys' fee awards under § 1117(a) are available to plaintiffs who opt to receive statutory damages under §1117(c). *Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

### 2. Analysis

#### a. Statutory Damages

Sream seeks statutory damages "in an amount not less than $100,000." (Pl.'s Mem. at 13.) As Sream alleges that Orfanos observed ten counterfeit water pipes bearing the RooR mark in Smoke Scene's store, Smoke Zone, this would amount to $10,000 per infringing mark. (*See* Compl., Ex. B.)

Smoke Scene's violations of the trademark law were established by its failure to "controvert the evidence of counterfeiting alleged in the complaint" or otherwise appear in this action. *North Face Apparel Corp*, 2015 U.S. Dist. LEXIS 93133, *15. Moreover, "[b]y virtue of their default [defendants] are deemed to be willful infringers." *Id.* (quoting *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, 12 Civ. 9190 (GDB) (AJP), 2013 WL 6481354, at *3 (S.D.N.Y. Dec. 3, 2013)). Thus, pursuant to 15 U.S.C. § 1117(c)(2), Sream is entitled to statutory damages in an

amount that the Court considers "just," not to exceed $2,000,000 per counterfeit mark, per type of goods or services sold, offered for sale, or distributed.

Several factors set forth above weigh in favor of granting Sream a lower statutory damages award than the amount sought. In an inquest on damages in a similar Lanham Act case brought by Sream, Magistrate Judge Freeman recommended that Sream be awarded statutory damages in the amount of $50,000 per defendant, or $3,333.33 to $4,166.66 per mark. *Sream, Inc. v. Khan Gift Shop, Inc.*, 15cv2091 (KMW) (DF), 2016 U.S. Dist. LEXIS 24122, at *31 (S.D.N.Y. Feb. 23, 2016), adopted by *Sream, Inc. v. Khan Gift Shop, Inc.* 15cv2091 (KMW) (DF), 2016 U.S. Dist. LEXIS 37101 (S.D.N.Y. Mar. 22, 2016). Here, as in the prior case, the allegations in Sream's Complaint do not suggest that Smoke Scene reaped substantial profits from their sale of counterfeit RooR pipes. *See also Louis Vuitton Malletier*, 648 F. Supp. 2d at 505 (collecting cases with high statutory damages awards where there was reason to believe that the defendants' sales were substantial). The pipe purchased by Orfanos cost $21.72, (Compl., Ex. B.), and Orfanos testified that, in general, "counterfeit RooR pipes are sold for between $20 and $40." (Hr'g Tr. 26:5-20.) Assuming sale of all ten of the counterfeit pipes on display in Smoke Scene's store at prices within this range, they would have earned, at most, between $200 and $400. *See Khan Gift Shop, Inc.*, 2016 U.S. Dist. LEXIS 24122, at *29 (finding that defendants would have made less than $490 on the RooR-marked pipes observed in their stores).

Moreover, Sream has failed to provide specific evidence of the revenues that it lost as a result of counterfeiting beyond the testimony of Sream's president, Farraj, that the company had experienced "50 to 60 percent" loss of business in the past three to four years, and his speculation that the lost business "went to counterfeiters." (Hr'g Tr. at 7:11-12.) While Orafos testified generally that counterfeit sellers would suggest that the pipes bearing the RooR brand

10

were "brittle" and steer customers toward more expensive products, and that Orafos could "imagine" higher-end customers being deterred from the authentic RooR products as a result, the connection was not apparent. (*Id.* at 31:18-32:7.)

Nevertheless, Smoke Scene's willful conduct, its failure to participate in the case, including discovery, and the potential deterrence effect of a higher statutory damages award, "weigh[] in favor of granting Plaintiff an award that would be higher than Plaintiff's actual damages." *Khan Gift Shop, Inc.*, 2016 U.S. Dist. LEXIS 24122, at \*29. The Court finds that an award of $50,000 against Smoke Scene would serve as a specific and general deterrent to others, while ensuring the Sream does not reap a "windfall" against a small-scale infringer. *Id.*; *see also Coach, Inc. v. O'Brien*, 10 Civ. 6071 (JPO) (JLC), 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012).

### b. Injunctive Relief

In its memorandum, Sream asks the Court to grant "a permanent injunction," but fails to specify the nature of the relief sought. (Pl.'s Mem. at 13.) In the proposed Order to Show Cause and Motion for Default Judgment annexed to the memorandum, Sream seeks an order "enjoin[ing] [Smoke Scene] from further sale or distribution of the counterfeit products[.]" (Pl.'s Mem, Ex. A.; *see also* Doc. No. 24, signing the proposed order but striking the injunctive relief paragraph.) Sream has demonstrated that it is entitled to such relief under 15 U.S.C. § 1116(a). It has achieved success on the merits by virtue of Smoke Scene's default as to liability, *A.M. Surgical, Inc.*, 2016 U.S. Dist. LEXIS 53055, \*32, and the pleadings demonstrate that an ordinarily prudent customer would be confused by the source of the counterfeit goods. *CommScope, Inc.*, 809 F. Supp. 2d at 41. Accordingly, I recommend that the Court enter a permanent injunction be entered enjoining Smoke Scene from further sale or distribution of counterfeit RooR-marked products.

### c. Attorneys' Fees and Costs

Sream has demonstrated that it could be entitled to an award of attorneys' fees and costs under the statute. 15 U.S.C. 1117(a) (attorneys' fees available in "exceptional cases"); *Merck Eprova AG*, 760 F.3d at 265-66 ("exceptional" circumstances in Lanham Act cases include willful infringement). However, Sream has submitted no evidence in support of such an award, or even requested a specific amount of fees or costs, and so the Court is unable to recommend an award. I therefore recommend that Sream's request for attorneys' fees and costs be denied without prejudice because its submissions do not provide appropriate support for such an award.

## IV. CONCLUSION

For the reasons stated above, I recommend that the Court award Sream damages of **$50,000** against Smoke Scene and that Court enter a permanent injunction enjoining Smoke Scene from further sale or distribution of counterfeit RooR-marked products. I further recommend that Sream's request for attorneys' fees and costs be denied without prejudice.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Valerie E. Caproni, 40 Foley, Room 240, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 1970, New York, New York 10007.

Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474

U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: November 28, 2016**
**New York, New York**

*Ronald Ellis* (signature)

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**